## BRENNAN v. CHAPIN.

*(Common Pleas of New York City and County, General Term. June 6, 1892.)*

1. CONTRACT TO EXCHANGE LANDS—RIGHT TO POSSESSION.
  A party to a contract for the exchange of lands, by whose terms the deeds are to be delivered at a future date, is not entitled to possession, in the absence of an express agreement, until the delivery of the deeds, and cannot recover for the keep of horses of the other party, on the land which he is to receive, between the dates of the signing of the contract and delivery of the deeds.
2. STATUTE OF FRAUDS—PROMISE TO PAY DEBT OF ANOTHER.
  A promise by a husband to pay for the keep of his wife's horses is not binding on him, unless in writing.
3. ACTIONS—CONTRACT FOR BENEFIT OF ANOTHER—PARTIES.
  A wife is the proper party defendant, and not her husband, to an action on a contract made by the latter, for her benefit, to pay for the keep of her horses.
4. IMPLIED LIABILITY—UNAUTHORIZED SHOEING OF HORSE.
  An owner of a horse is not liable to one who shoes her horses without being requested to do so, or promised to be paid for the same.

Appeal from seventh district court.

Action by Thomas Brennan against Chester W. Chapin. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before BOOKSTAVER and BISCHOFF, JJ.

*William J. Kelly*, for appellant. *Samuel G. Adams*, for respondent.

BOOKSTAVER, J. This action was brought to recover the sum of $203.90, which the plaintiff claimed was due him for feed and care of certain horses, alleged to belong to the defendant, between February 11, 1891, and May 11, 1891, and also to recover the value of eight pigs which plaintiff claimed he had purchased from defendant, and which he had failed to deliver; also, the cost of shoeing a team of horses, and for services in removing defendant's furniture. From the return it appears that the plaintiff owned certain premises on Rose street, in this city, and Amelia W. Chapin, the wife of the defendant, owned a farm at Red Bank, N. J. A contract was made on the 12th February, 1891, for the exchange of these properties, and by its terms the deeds were to be delivered on the 12th March, 1891. This time, however, was subsequently extended until the 16th of that month, when the deeds were delivered. Plaintiff's action seems to have been based on the theory that after he signed the contract, on the 12th February, 1891, he was entitled to possession, because, as stated in his bill of particulars, he charged for boarding the horses from that time. Of course a mere contract to purchase or exchange property gives no right to possession before its completion by the delivery of the deeds, without an express agreement to that effect, either in the contract itself or out of it. But no such agreement was proved upon the trial. It is true the plaintiff testified that he did take possession on the 12th February, but he showed no agreement to allow him to do so, nor did he show any acts of possession except visiting the property on two or three occasions, which seem to us to have been rather in pursuance of a license to do so than an agreement that he might take possession, because all of the servants employed on the premises until the 16th March were under the direction and control of the defendant or his wife, and their services were paid for by the latter. There was no visible change of ownership. Clearly, therefore, the plaintiff was not entitled to recover for the keep of the horses before the latter date; and, on the argument of this appeal, it was claimed by the respondent that the court below only allowed for the board of the horses after the 16th March. But it appears from the return that these horses were without doubt the property of Mrs. Chapin, and not of the defendant. There is nothing in plaintiff's testimony to dispute this fact. Although the plaintiff testified that the defendant promised to pay for their keep, this is denied by the defendant, and, even if he made the naked promise, it was to answer for the debt, default, or miscarriage of a third person, and was not in writing, and therefore void, under the statute. Neither was it shown that in making the promise the defendant acted as the agent for his wife, or was authorized by her to make it, and, even if it had been made for her benefit, then she, and not the defendant, should have been sued for the board of the horses. We are also strongly inclined to the opinion, from the evidence, that the horses were kept on the farm in New Jersey at the request of the plaintiff, and were used by him for such work as they were fitted to do, and that it was the intention of the parties that this should be in full payment for their keep; and it further appears that the defendant or his wife frequently sent for them before they were delivered to her or her agent.

As to the pigs, it is true that the contract of sale called for the delivery of live stock on the premises at the time of its execution, with certain exceptions, and there is some evidence on the part of the plaintiff that at that time he and another counted 21 pigs. But there is no evidence as to whether or not these pigs were at the time all on the premises to be exchanged for the Rose street property, or belonged to Mrs. Chapin or her husband. There is nothing in the return to show but that the shoeing of the horses was a voluntary act on the part of the plaintiff. He does not show a request from Mr. Chapin or any one else that it should be done, or a promise to pay for the same. The judgment should therefor be reversed, and a new trial ordered, with costs to the appellant, to abide the event.